UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:15 CV 1704 RWS |
| | ) |
| DOE RUN RESOURCES, CORP., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs in this matter are more than sixteen hundred Peruvian children who live near Defendants' lead smelter in La Oroya, Peru.[1] Plaintiffs allege that they were injured after being exposed to toxic lead emissions from the smelter. The corporate defendants are United States companies, who through their Peruvian subsidiary, owned and operated the lead smelting and refining complex. The individual defendants in this matter are the directors and/or officers of the defendant companies.

Plaintiffs filed thirty-three cases in Missouri state court asserting their personal injury claims against Defendants. Each case contained approximately ninety plaintiffs. Defendants removed these cases to this Court where seventeen

---

[1] Hundreds of other Peruvian children have filed similar claims against the same defendants arising out of the La Oroya lead operations. They are represented by different counsel and their cases have been consolidated before United States District Judge Catherine D. Perry in A.O.A, et al. v. Rennert, et al., Case No. 4:11 CV 44 CDP.

cases[2] were consolidated in the present case and sixteen cases await consolidation.[3]

Three of the defendants, The Renco Group, Renco Holdings, Inc., and Ira Rennert, have filed a motion to dismiss in all these cases for lack of personal jurisdiction. Because the Court has personal jurisdiction over these defendants, I will deny their motion.

*Background*

The relationship between these three defendants and the other defendants in this case is as follows. The Renco Group, Inc. is the parent company of Renco Holdings, Inc. They are both New York corporations with their principal places of business in New York. (Hereinafter these entities shall be referred to collectively, as the parties have done, as "Renco.") Ira Rennert is a resident of New York City. Rennert owns Renco and serves as Renco's Chairman and Chief Executive Officer. Rennert is also the Chairman of Defendant The Doe Run Resources Corp.

The Renco Group, Inc. owns Defendant DR Acquisition Corp., a Missouri corporation with its principal place of business in Missouri. DR Acquisition, in

---

[2] The seventeen consolidated cases are cause numbers: 4:15 CV 1704, 4:16 CV 59, 4:16 CV 60, 4:16 CV 61, 4:16 CV 634, 4:16 CV 749, 4:16 CV 822, 4:16 CV 829, 4:16 CV 1154, 4:16 CV 1643, 4:16 CV 1678, 4:16 CV 1726, 4:16 CV 1751, 4:17 CV 787, 4:17 CV 790, 4:17 CV 797, and 4:17 CV 1225.

[3] The sixteen cases awaiting consolidation are cause numbers: 4:17 CV 1924, 4:17 CV 1927, 4:17 CV 1933, 4:17 CV 1934, 4:17 CV 1935, 4:CV 1936, 4:CV 1940, 4:17 CV 1948, 4:17 CV 1957, 4:17 CV 1959, 4:17 CV 1963, 4:17 CV 2001, 4:17 CV 2207, 4:17 CV 2858, 4:17 CV 560, and 4:17 CV 638. Attorneys entered appearances for Defendants Rennert, Renco Group, and Renco Holdings in all these cases. These defendants filed a motion to dismiss based on a lack of personal jurisdiction in all the cases except the last two, 4:17 CV 560 and 4:17 CV 638.

turn, owns Defendant The Doe Run Resources Corp., a New York corporation with its principal place of business in St. Louis, Missouri.  The Doe Run Resources Corp. wholly owns Doe Run Cayman, Ltd., a Cayman Island corporation which, in turn, owns Doe Run Peru.[4]   The remaining individual defendants in this matter, Marvin K. Kaiser, Theodore P. Fox, III, Jerry Pyatt, Jeffery L. Zelms are current or former officers of The Doe Run Resources Corp.[5]

Plaintiffs allege in their complaint that Renco and Rennert exerted "complete control, not merely stock control, but complete domination of the finances, policies, and business practices of Doe Run Peru.  The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own."  [Compl. at ¶ 29 and ¶ 65]  Plaintiffs allege that the corporate defendants made decisions in Missouri and New York regarding all facets of the operation of the La Oroya Complex.  [Compl. at ¶ 34]  Plaintiffs' allege that those decisions led the La Oroya Complex to operate in a way that "negligently, carelessly, and recklessly generated, handled, stored, released, disposed of, and failed to control and contain … the release of toxic metals, gases, and other toxic substances" into the environment around the Complex.  [Compl. at ¶ 35]  The result was a toxic

---

[4] Neither Doe Run Cayman, Ltd. nor Doe Run Peru are defendants in this lawsuit.

[5] Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss based on International Comity [Doc. 180] suggests that since 2007 Defendant DR Acquisition and Defendant Renco Group directly own the La Oroya Complex.

3

contamination of the area which led to Plaintiffs' injuries.

Plaintiffs' complaint alleges that Defendant Rennert is the Chairman and Chief Executive Officer of Renco. Plaintiffs allege that Rennert is also the Chairman and an officer of Defendant The Doe Run Resources Corp. Plaintiffs allege that Rennert is the controlling owner of all the corporate defendants in this matter. [Compl. at ¶¶ 10 and 59] Plaintiffs allege that Defendants, including Rennert, during the course of their ownership, operation, management, or control of operations of the La Oroya Complex, made decisions in Missouri and New York regarding the operations of the Complex. Plaintiffs allege that those decisions were "negligent, careless or reckless and resulted in the release of metals and other toxic and harmful substances, including lead, arsenic, cadmium, and sulfur dioxide, into the air and water and onto the properties on which the minor plaintiffs reside, use or visit" which led to their injuries. [Compl. at ¶ 24] Plaintiffs allege that Rennert, as an officer of Renco and The Doe Run Resources Corp., is individually liable to Plaintiffs because he had actual knowledge of The Doe Run Resources Corp.'s "tortious wrongful conduct and participated in it." [Compl. at ¶ 59] Plaintiffs allege that Rennert's "responsibilities, actions and omissions included but were not limited to approval of expenditures for pollution control measures and expenditures for the remediation of properties." Additionally, Plaintiffs allege that

4

Rennert had knowledge of the toxic emissions, had knowledge of technologies owned by The Doe Run Resources Company that were available to remediate the contaminated soil that were not used, and "participated and approved budgets which delayed implementation of proper pollution control measures and delayed remediation" efforts. [Compl. at ¶ 61]  Renco and Rennert have moved to dismiss the claims against them based on a lack of personal jurisdiction.

*Legal Standard*

When ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in light most favorable to the Plaintiff. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level. Id. at 555.

*Discussion*

The present case is the lead case.  It was removed from Missouri state court to this Court on November 13, 2015.  An additional sixteen cases were removed to

5

this Court through March 31, 2017.  These cases were consolidated with this lead case.  Counsel for Defendants Renco and Rennert entered their appearance in all these cases.  The Renco Group removed all of the cases and Renco Holdings and Rennert joined in the removal.  Renco and Rennert filed answers in almost all of these cases.[6]  Renco and Rennert subsequently removed an additional sixteen cases to this Court in which they did not file an answer.  Instead of filing an answer, they filed a motion to dismiss based on a lack of personal jurisdiction in fourteen of these cases.  These sixteen cases will be consolidated with this lead case after the entry of this order.

Despite litigating this matter since November 15, 2015, Renco and Rennert waited until August 17, 2017, to file a motion to dismiss in the initial seventeen removed cases based on a lack of personal jurisdiction.  The motion was filed in the wake of two decisions the United States Supreme Court released in May and June of 2017, BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549 (2017)[7] and Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773

---

[6] In their motion to dismiss based on a lack of personal jurisdiction, filed on August 17, 2017, Renco and Rennert assert for the first time that they were never served with the complaint in case numbers 4:15 CV 1704, 4:16 CV 822, 4:16 CV 829, and 4:16 CV 1678.  In addition, Rennert asserts he was not served with the complaint in case number 4:16 CV 1154.  Renco and Rennert assert that their motion to dismiss is being filed as an initial pleading in lieu of an answer.  Counsel entered an appearance their behalf in each of these cases.  Renco and Rennert never moved to dismiss based on a lack of service and have waived service by filing their present motion to dismiss.  See Fed. R. Civ. P. 12(h)(1); Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir. 1992) (if a party files a pre-answer motion and fails to assert a defense for insufficiency of service, he waives that defense).

[7] The BNSF Ry. Co case addresses general jurisdiction.  Because Plaintiffs' claims are based on specific jurisdiction the decision in BNSF Ry. Co does not apply to the outcome of the present motion to dismiss.

(2017), respectively. However, neither of these cases supports Renco and Rennert's motion.

As an initial matter, Renco and Rennert waived any right to challenge personal jurisdiction by filing answers to the complaint without asserting a personal jurisdiction defense and by subsequently litigating the matter extensively before filing their present motion to dismiss.[8]

Personal jurisdiction is an individual right that may be waived. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A person may submit to the jurisdiction of the court by appearance, by not timely raising the defense in an answer or responsive pleading, or by conduct that amounts to a "legal submission to the jurisdiction of the court, whether voluntary or not." Id. at 704. A "bald assertion" of lack of personal jurisdiction does not preserve such a defense in perpetuity, as the defense may be lost by later conduct such as not timely seeking a ruling. Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). Moreover, waiver of personal jurisdiction may occur when a defendant's "conduct did not reflect a continuing objection to the power of the court to act over the defendant's person." Id. (internal quotation and citation omitted).

Over the lengthy course of this litigation, Rennert and Renco never before

---

[8] In regard to the cases that Renco and Rennert assert that they were not served, their jurisdiction motion is denied on the merits.

7

asserted a lack of personal jurisdiction. In their answers to the multiple complaints consolidated in this matter, Rennert and Renco admitted that subject-matter jurisdiction and venue were proper in this Court, and never raised the issue of personal jurisdiction. They participated in motion practice and numerous hearings. As a result, they waived any personal jurisdiction grounds to dismiss the claims against them.

    Renco and Rennert argue that they have not waived their current jurisdictional challenge because the Bristol-Myers Squibb Co. decision changed the law of personal jurisdiction and provided them with a new basis to object to personal jurisdiction that was previously unavailable. In Bristol-Myers Squibb Co., more than 600 plaintiffs from 34 states brought suit in a California state court against a pharmaceutical company, alleging damage to their health from the drug Plavix. 137 S. Ct. at 1777. The California Supreme Court held that Bristol-Meyers was subject to personal jurisdiction in California for the claims of the non-California plaintiffs. The United States Supreme Court reversed. Although personal jurisdiction existed over Bristol-Meyers for the claims of the California plaintiffs, the Court held that there were insufficient California contacts between Bristol-Meyers and the non-California plaintiffs related to the claims of those plaintiffs. Id. at 1782-1783. The Court described this as a "straightforward

application . . . of settled principles of personal jurisdiction …" Id. at 1783. In other words, the Court's decision did not announce a new rule regarding personal jurisdiction. It simply reiterated that specific jurisdiction over a defendant may be invoked when the lawsuit arises out of or relates to defendant's contacts in the forum. Id. at 1780. As a result, the decision in Bristol-Myers Squibb Co. did not excuse Renco and Rennert's waiver of a personal jurisdiction challenge or reset the clock to bring that challenge.

Moreover, the decision in Bristol-Myers Squibb Co. does not undermine the fact that Rennert and Renco are subject to specific personal jurisdiction in Missouri based on the allegations in all of the complaints removed to this Court.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction, that is, plaintiff must allege facts sufficient to support a "reasonable inference that the defendants can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation and citation omitted). The "evidentiary showing required at the prima facie stage is minimal and may be tested by the pleadings, affidavits, and exhibits in support and in opposition to the motion." Id. at 592. The evidence is viewed in the light most favorable to the party invoking personal jurisdiction and all factual conflicts are

resolved in favor of that party.  Id.

There are two types of personal jurisdiction: general and specific.  Bristol-Myers Squibb Co., 137 S. Ct. at 1780.  For an individual defendant the forum for the exercise of general, or all-purpose, jurisdiction is the individual's domicile.  Id.  The forum for the exercise of general jurisdiction over a corporation is the state of its place of incorporation or the location of its principal place of business.  BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017).  Plaintiffs do not assert Renco and Rennert are subject to general jurisdiction in Missouri.  They assert that their claims against Renco and Rennert are properly before this Court based on specific jurisdiction.

Specific, or "conduct-linked," jurisdiction involves suits arising out of or related to the defendant's contacts with the forum.  Bristol-Myers Squibb Co., 137 S. Ct. at 1780.  The defendant's activities within the forum state must give rise to, or relate to, the cause of action.  Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).  Specific jurisdiction is proper "when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts."  Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979–80 (8th Cir. 2015).

Missouri courts may exercise specific jurisdiction over an out-of-state defendant if two requirements are met:  1) jurisdiction must be allowed by the

Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process.  Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 593 (8th Cir. 2011).  Missouri's long-arm statute authorizes personal jurisdiction over defendants under several categories including over defendants who transact business or commit a tort within the state.  Mo. Rev. Stat. § 506.500.1(1), (3).  The categories in the long-arm statute, such as transacting business or making a contract, are construed broadly "to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause."  State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984).

Due process requires that a defendant have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945).  When assessing the sufficiency of a defendant's contacts, the court should examine five factors:  (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.  Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).  Physical entry into a state "is certainly a

relevant contact." Walden v. Fiore, 571 U.S. 277, 285 (2014). "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir.2003).

The essence of Plaintiffs' claims against Rennert and Renco is that they transacted business in Missouri that caused injuries to the plaintiffs in Peru. Renco and Rennert had extensive contacts with Missouri. Plaintiffs allege that they negotiated contracts, filtered through Missouri, which related to the activities that caused Plaintiffs' damages. Rennert used Renco to structure the acquisition and financing of the La Oroya operation, he attended numerous meetings in Missouri to discuss the environmental cleanup in Peru, and he approved (and failed to approve) the funding and scheduling of that cleanup.[9] Rennert's and Renco's alleged conduct constitutes transacting business in Missouri within the meaning of Missouri's long-arm statute. Mo. Rev. Stat. § 506.500.3. Rennert's and Renco's

---

[9] Evidence regarding Renco and Rennert's contacts in Missouri and control of Doe Run Peru is found in the Court's records of the companion case to this litigation, A.O.A. et al. v. Rennert, et al., Case No. 4:11 CV 44 CDP; Doc. # 725, pp 2-40 and the exhibits thereto. (Renco and Rennert filed a similar motion to dismiss based on a lack of personal jurisdiction in that case.) See Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (In addressing a motion to dismiss the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.) (internal quotation and citation omitted). A federal district court may take judicial notice, whether requested or not, of its own records and files, and facts which are part of its public records. United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981); see also Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.)

12

activities and contacts with the state are sufficient to meet the state long-arm requirements and the due process requirements of the Fourteenth Amendment. In addition, Plaintiffs allege that Renco and Rennert were the alter-ego of Doe Run Peru and controlled the decision making of that company through the Missouri corporate defendants. When a corporate parent acts as the alter-ego of its Missouri subsidiary it is subject to jurisdiction in Missouri. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003). Because this lawsuit arises out of and relates to Renco and Rennert's contacts in Missouri, Plaintiffs have stated a prima facie case of personal jurisdiction over these defendants. See Bristol-Myers Squibb Co., 137 S. Ct. at 1780.

Moreover, Plaintiffs' allege claims against Rennert in his individual capacity. While simply holding a corporate office does not expose an officer to individual liability for corporate misdeeds, it also does not necessarily shield the officer from individual liability. An individual is not protected from liability simply because the acts constituting the tort "were done in the scope and course, and pertained to, the duties of his employment." Curlee v. Donaldson, 233 S.W.2d 746, 754 (Mo.App.1950). If the rule were otherwise, "the agent of a corporation could shield himself from liability for almost every kind of wrong, provided he was acting in the capacity of agent...." Boyd v. Wimes, 664 S.W.2d 596, 598 (Mo.

13

Ct. App. 1984).   Under Missouri law, corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong.  Id.  Plaintiffs' allege that Rennert, as an officer of Renco and The Doe Run Resources Corp., had actual knowledge of The Doe Run Resources Corp.'s tortious wrongful conduct in Missouri and that he participated in it.  These allegations are sufficient to assert personal jurisdiction over Rennert for his alleged activity in Missouri as an officer of The Doe Run Resources Corp.

As a result, I find that Plaintiffs have made a prima facie showing of personal jurisdiction by alleging facts sufficient to support a reasonable inference that Defendants Renco and Rennert can be subjected to jurisdiction within the state of Missouri.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants The Renco Group, Renco Holdings, Inc., and Ira Rennert's motion to dismiss for lack of personal jurisdiction [174] is **DENIED**.

**IT IS FURTHER ORDERED that** the Clerk of Court shall docket this order in all the cases listed in footnotes 2 and 3 of this order.

                                                _____
                                                RODNEY W. SIPPEL
                                                UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2019.